901 So.2d 1109 (2005)
Billy Mac McCOY, Plaintiff-Appellant
v.
STATE of Louisiana, Thru Jerry L. JONES, District Attorney, D. Milton Moore, III, Judge, Fourth Judicial District Court, Parish of Ouachita and Sheriff Chuck Cook, Individual/Official Capacities, Defendant-Appellee.
No. 39,323-CW.
Court of Appeal of Louisiana, Second Circuit.
February 17, 2005.
*1110 Billy Mac McCoy, Pro Se.
Jerry L. Jones, District Attorney, Cynthia P. Lavespere, Assistant District Attorney, for State of Louisiana.
Charles L. Cook, Pro Se.
Charles C. Foti, Jr., Attorney General, David G. Sanders, Assistant Attorney General, Sonia Mallett, Assistant Attorney *1111 General, for Defendant D. Milton Moore, III.
Before BROWN, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
This matter comes before the court on the writ application of Billy Mac McCoy ("McCoy"), a Department of Public Safety and Corrections inmate who has been incarcerated at the Louisiana State Penitentiary at Angola, Louisiana since 1973. McCoy is seeking review of a judgment of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, which granted a motion to revoke his pauper status for having three qualifying "strikes" under La. R.S. 15:1187. For the following reasons we affirm the trial court's judgment.

FACTS
This action originated on June 5, 2002, when McCoy filed suit in Ouachita Parish alleging violations of his civil rights in various respects against the following defendants: the State of Louisiana, through service on Jerry L. Jones, District Attorney of Ouachita Parish; Judge D. Milton Moore, III, of the Fourth Judicial District Court;[1] Charles L. Cook, Sheriff of Ouachita Parish; and Richard P. Ieyoub, Attorney General of the State of Louisiana. The district court signed an order granting McCoy's request to proceed in forma pauperis. Subsequently, the Attorney General's Office, representing the Honorable D. Milton Moore, III, in his capacity as a defendant, filed a motion to revoke McCoy's pauper status pursuant to the provisions of La. R.S. 15:1187 pertaining to the "three strikes" rule. McCoy contended that the "three strikes" against him were absolute nullities and could not be used to revoke his pauper status. A hearing on the matter was held on June 24, 2004. Following the hearing, the trial court found that McCoy's suit was "not in the nature of a post conviction relief application or a petition for writ of habeas corpus." The trial court noted that McCoy's action involved "multiple causes of action against varying Defendants, parts of which sound in tort and parts of which deal directly with his conditions of confinement and the effects of actions by governmental officials on his life as a prisoner." The trial court concluded that the latter causes of action clearly fall within the definitional confines of the Prison Litigation Reform Act ("PLRA"), La. R.S. 15:1181(2), et seq. and therefore are subject to the sanctions found in La. R.S. 15:1187. The trial court prohibited McCoy from further prosecution of any remaining claims and causes of action that come within the definition of La. R.S. 15:1181(2), which concern the conditions of his confinement or the effects of actions by government officials on his life as a person confined in prison. Accordingly, the trial court revoked McCoy's pauper status finding that the Attorney General's Office had sufficiently proven "the existence of three strikes and their finality" and the court ordered McCoy to pay court costs in advance for the future prosecution of these claims. The judgment of revocation was ordered to be prospective only, and the trial court expressly granted McCoy pauper status if he sought review of this ruling. This court granted McCoy's application for writs on the limited issue of the propriety of the revocation of his pauper status.

DISCUSSION
On appeal, McCoy alleges eight assignment of errors, two of which have no correlation *1112 to the judgment that is before this court for review. The remaining issues have been consolidated as follows:
1. Did the trial court err in revoking McCoy's pauper status subsequent to an evidentiary hearing;
2. Did the trial court err by revoking McCoy's pauper status after ruling that McCoy's actions against various defendants are not related to the fact and duration of his incarceration and, therefore, not post conviction relief matters that are an exception to the PLRA "three strikes" provision which would allow him to proceed in forma pauperis;

3. Did the trial court err when it declined to appoint an attorney to represent McCoy based on the rationale that McCoy did have access to an adequate law library and an adequate legal aid to assist him in prosecuting his claims;
4. Does the "three strikes" provision of La. R.S. 15:1187 of the PLRA violate Article III of the Louisiana Constitution by denying McCoy equal protection of the laws; and
5. Does the "three strikes" provision of La. R.S. 15:1187 of the PLRA violate Article 1, Section 22 of the Louisiana Constitution by denying McCoy access to the courts?
First, McCoy claims that he is entitled to proceed in his action in forma pauperis pursuant to La. C.C.P. art. 5181(B), which provides in pertinent part a payment schedule "[i]n the event any person seeks to prosecute a suit in a court of this state while incarcerated or imprisoned for the commission of a felony without paying the costs in advance as they accrue or furnishing security thereof. . . ."
A court may subject the indigent litigant to continuous scrutiny to prevent abuse of the privilege. Smith v. Smith, 543 So.2d 608 (La.App. 2d Cir.1989). Notwithstanding the liberal construction of codal provisions authorizing indigents to sue in forma pauperis, trial courts have the authority, as well as the duty, of continuous scrutiny to prevent abuse of this privilege. This authority is subject only to the requirement of due process, namely that an evidentiary hearing is required when rescission of an order to proceed in forma pauperis depends upon contested factual issues. T & S Feed Co., Inc. v. Meaux, 339 So.2d 421 (La.App. 1st Cir. 1976).
The record clearly shows that McCoy was indeed given proper notice of the requisite evidentiary hearing. Both parties were given equal opportunity to prove the factual issues in dispute regarding the motion to revoke McCoy's pauper status pursuant to the "three strikes" rule. Following the hearing, the trial court found that sufficient proof of the mandatory "three strikes" existed and ultimately, McCoy's pauper status was revoked. Jurisprudence supports such a revocation following a requisite evidentiary hearing. Roy v. Gulf States Utilities Co., 307 So.2d 758 (La.App. 3rd Cir.1975). Absent a clear abuse of the discretion to grant permission to proceed in forma pauperis, the appellate court should not disturb the trial court's ruling. Smith v. Doody, 98-198 (La.App. 5th Cir.10/14/98), 721 So.2d 60, writ denied, 97-0592 (La.04/18/97), 692 So.2d 455, reconsideration denied, 97-0592 (La.05/30/97), 694 So.2d 229. There is no evidence in the record indicating an abuse of this discretion and, accordingly, we find this assignment of error lacks merit.
Next we consider whether McCoy has the right to proceed in forma pauperis in this action and whether his claims fall outside the scope of the sanctions provided for in La. R.S. 15:1187, which provides that:
In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding in forma pauperis if the prisoner has, on three or *1113 more prior occasions while incarcerated or detained in any facility, brought an action or appeal in a state court that was dismissed on the ground that is was frivolous, was malicious, failed to state a cause of action, or failed to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
Louisiana 15:1181 provides, in pertinent part, that:
(2) "Civil action with respect to prison conditions" or "prisoner suit" means any civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include post conviction relief or habeas corpus proceedings challenging the fact or duration of confinement in prison....
* * *
(6) "Prisoner" means any person subject to incarceration, detention, or admission to any prison who is accused of, convicted of, sentenced for, or adjudicated delinquent for a violation of criminal law or the terms or conditions of parole, probation, pretrial release, or a diversionary program. Status as a "prisoner" is determined as of the time the cause of action arises. Subsequent events, including post trial judicial action or release from custody, shall not affect such status....
The PLRA was enacted by Acts 1997, No. 731, § 1, and became effective on July 9, 1997. The purpose of enacting the PLRA was to provide for civil actions with respect to prison conditions. The definition provision of the PLRA, La. R.S. 15:1181, shows that the legislative intent was to provide for civil actions with respect to prison conditions or effects of officials' actions on prisoners' lives, as opposed to matters concerning incarceration vel non. Frederick v. Ieyoub, XXXX-XXXX (La.App. 1st Cir.05/12/00), 762 So.2d 144, writ denied, XXXX-XXXX (La.2001), 789 So.2d 581.
As previously stated, McCoy is incarcerated at the LSP at Angola, Louisiana and would therefore come under the definition of "prisoner" pursuant to La. R.S. 15:1181(6); thus, he is subject to the constraints of Section 1187.
McCoy cites Colquitt v. Claiborne Parish, Louisiana, 36,260 (La.App.2d Cir.08/14/02), 823 So.2d 1103 and 37,082 (La.App. 2d Cir.04/09/03), 843 So.2d 553, to support his position that his claims would come under the exception of the PRLA. In that case, inmate Colquitt filed suit against the District Attorney claiming that his right to a speedy trial had been violated and he sought damages for his incarceration and requested an immediate release from custody. The trial court found Colquitt's claims to be justifiably a matter of post conviction relief and, therefore, concerned "the fact or duration of his confinement in prison" relegating them outside the scope of the PRLA. Colquitt was permitted to prosecute his action in forma pauperis.
We find that McCoy's reliance on Colquitt is misplaced as his case presents a different situation and is not a post conviction relief matter. The record reveals that McCoy's claims, which were filed against several defendants, directly correlate to actions concerning conditions of his confinement or effects of actions by government officials on his life as a person confined in prison. In this instant, McCoy refers to his lawsuit as "a State Tort Action against the defendants named herein, seeking Compensatory, Declaratory and Injunctive relief from their unconstitutional actions." A close examination of McCoy's claims indicates that the trial court was correct in its ruling that *1114 McCoy's action was related to the conditions of his confinement or the effects of actions by government officials on his life as a person confined in prison. So considering, we find the trial court correctly allocated these claims to fall within the context and purpose of La. R.S. 15:1187. We find no error in this regard.
We next must determine whether McCoy was previously found to have three qualifying "strikes" under La. R.S. 15:1187. See McCoy v. Scheckman, XXXX-XXXX (La.App. 4th Cir.09/30/02), 829 So.2d 602. The records of the Nineteenth Judicial District Court in the Parish of East Baton Rouge establish that McCoy has been allocated as having "three strikes" in actions he filed "while incarcerated or detained in any facility."[2] Therefore, unless the record indicates that McCoy "is under imminent danger of serious physical injury," the sanctions of La. R.S. 15:1187 are applicable in this case. See, Frederick, supra. The record is void of any indication that this exception is warranted. Moreover, McCoy never alleges that he is under imminent danger of serious physical injury.
McCoy's next assignment of error concerns a complaint that the trial court erred when it denied his request to appoint counsel. McCoy cited the case Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) in support of his argument. In Bounds, the Supreme Court held, that in order for a prisoner to exercise his constitutional right to have access to courts, prison authorities are required to provide "adequate law libraries" or "adequate assistance from persons trained in the law." The Supreme Court in Lewis v. Casey, 518 U.S. 343, 355, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996) held "that Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines. . . ." "The tools it requires to be provided are those that the inmates need in order to attack their sentences... or in order to challenge conditions of their confinement." In the case sub judice, the record is clear that McCoy has not been denied his right of access to the courts and that he has been given and in fact has taken full advantage of those legal tools made available to him. One only has to review the numerous challenges McCoy has filed to recognize that he has not been denied his right of access to the courts but instead has had access to both an "adequate library" and "trained legal assistance" to facilitate his continuous access to the courts.
*1115 McCoy further alleges that he has been denied his "first amendment rights to consult with" a "non-inmate counsel substitute." In support of McCoy's writ application he refers to the decision in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). In Johnson, the inmate claimed that he was denied adequate assistance in preparing a writ of habeas corpus which is a post-conviction claim. The court in Johnson stated that unless the prison provided a "reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief their policy restricting access to such assistance will be invalid." As McCoy's claims are not post conviction relief claims but instead claims that are the subject of the conditions of his confinement or effects of actions by governmental officials on his life as an inmate, we find his reliance on Johnson unfounded. Furthermore, we surmise that the law library and the legal counsel available to McCoy at Angola is a constitutionally adequate alternative.[3] Therefore, we find no merit to McCoy's claim in this regard.
Additionally, McCoy argues that his right to an adequate substitute legal aid has been denied based on the fact that he is not being afforded legal advice from the substitute aid of his choice. Prisoners have no right to a particular prisoner's help in legal matters as long as the putative recipient's constitutional right of access to the courts is not infringed. Tighe v. Wall, 100 F.3d 41 (5th Cir.1996). We find no jurisprudential support that would expand McCoy's rights beyond that he be provided adequate legal counsel or an adequate law library. This claim lacks merit.
Pertinent to the issues raised by McCoy are the Constitutional guarantees of "equal protection of the laws" provided to Louisiana citizens pursuant to Article I, Section 3 of the Louisiana Constitution. The legislature has been given wide discretion in enacting laws which affect certain groups of persons and interests differently from others.[4] In considering the constitutional challenges of McCoy, one must determine if there is a fundamental right involved and if there is a suspect classification. If there is not, then the issue to address is whether the law is supported by a rational basis reasonably related to a governmental interest sought to be advanced by it.
Unless a classification restricts fundamental personal rights or is based upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. Higgins v. Carpenter, 258 F.3d 797, 798 (8th Cir.2001), certiorari denied, Early v. Harmon, 535 U.S. 1040, 122 S.Ct. 1803, 152 L.Ed.2d 659 (2002); City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). In a per curiam opinion, the court in Higgins concluded that the PRLA need survive only a rational basis test, not a strict scrutiny test.
Neither prisoners nor indigents are considered a suspect class.[5] Thus McCoy's right to sue for civil damages is not based on a fundamental right to file a civil suit cost-free and his access to the courts may be restricted if it is determined *1116 there is a rational basis for that restriction. See Taylor v. Broom, 526 So.2d 1367 (La.App. 1st Cir.05/17/88); Everett v. Goldman, 359 So.2d 1256 (La.1978).
Common sense dictates that discouraging frivolous and malicious lawsuits that disrupt the continual depletion of judicial resources would, in this court's view, most certainly qualify as a legitimate state interest.[6] Applying this same rational basis review in the case sub judice, we find the PRLA does not violate the Equal Protection Clause of the Louisiana Constitution.
Finally, Article 1, Section 22 of the Louisiana constitution provides that:
... every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
We find that the PRLA does not impinge on this fundamental right because it does not prohibit McCoy from having a "reasonably adequate opportunity" to pursue valid lawsuits. The PRLA applies only to civil actions, and McCoy is only being denied in forma pauperis status for any civil claims that concern his condition of confinement or the effects of actions by government officials on his life in prison, unless he is in imminent physical danger. It has been McCoy's choice to continue to file frivolous, malicious, and meritless suits, hence he has received notice of dismissals that count as "strikes." Applying the "three strikes" rule in this instant does not prohibit McCoy from pursuing his lawsuit, but merely requires him to pay full filing fees like the rest of society.
Moreover, to protect McCoy's rights, the trial court ordered a stay of all actions to afford McCoy ample opportunity to comply with the provisions of La. R.S. 15:1186. This statute provides in pertinent part that: If a prisoner brings a civil action ... in which the prisoner is not allowed to proceed as a pauper, the prisoner must pay the required cost in advance ... that a failure to pay the costs in advance shall result in the claim being dismissed without prejudice.
Subsequent to the rendering of this opinion, McCoy must only pay the requisite fees to continue prosecution of his claims within the terms set forth in La. R.S. 15:1186.

CONCLUSION
We find that the district court correctly revoked McCoy's status as a pauper under the "three strikes" rule. Furthermore, McCoy's claims underscore the very purpose of the PLRA, namely to prevent the abuse by prisoners of filing a barrage of frivolous and malicious lawsuits at enormous costs to the public. Because McCoy has at least three strikes, he may not proceed in forma pauperis in this or any other state civil lawsuit that concerns the condition of his confinement or the effects of actions by governmental official unless he is in "imminent danger of serious physical injury." He may resume any claims dismissed under the PRLA pursuant to the fee provisions of La. R.S. 15:1186.
AFFIRMED.
NOTES
[1] Judge Moore no longer sits on the Fourth Judicial District Court and is currently a judge for the Second Circuit Court of Appeal.
[2] (a) Billy Mac McCoy (DOC # 75868) v. Burl Cain, et al., 19th JDC No. 443,696 "N." On December 18, 1997, judgment was signed assessing a "strike" against inmate McCoy. This judgment was affirmed on December 28, 1997 (1st Cir. No. 98-0574). Writs denied, McCoy v. Cain, 99-1068 (La.06/18/99), 745 So.2d 23.

(b) Billy Mac McCoy (DOC # 75868) v. Burl Cain, et al., 19th JDC No. 441,915 "H." On February 17, 1998, judgment was signed dismissing inmate McCoy's suit (not considered a district court "strike"). On June 25, 1999, the First Circuit dismissed inmate McCoy's appeal as frivolous pursuant to La. R.S. 15:1186(C), thereby assessing a "strike." McCoy v. Cain, 98-1274 (La.App. 1st Cir.06/25/99), 744 So.2d 224, writ denied, 1999-2347 (La.01/14/00), 753 So.2d 213.
(c) Billy Mac McCoy (DOC # 75868) v. Richard Stalder, et al., 19th JDC No. 448,054 "H." On April 19, 1999, judgment was signed assessing a "strike" against inmate McCoy. On September 22, 2000, the 1st Circuit affirmed the judgment. McCoy v. Stalder, 99-1747 (La.App. 1st Cir.09/22/00), 770 So.2d 447. No record of application for writs.
Despite the fact that the requisite three dismissals occurred prior to the passage of the statute (July 9, 1997) or its amendment (May 5, 1998), they are still effective under the PLRA three strikes provision. See Adepegba v. Hammons, 103 F.3d 383 (5th Cir.1996), and Green v. Nottingham, 90 F.3d 415 (10th Cir. 1996).
[3] See Bounds, supra; Johnson, supra; and Lewis, supra.
[4] See Valentine v. Thomas, 433 So.2d 289 (La.App. 1st Cir.05/17/83), writ denied, 440 So.2d 728 (La.10/07/83).
[5] See Murray v. Dosal, 150 F.3d 814, 818 (8th Cir.1998) (per curiam), cert. denied, 526 U.S. 1070, 119 S.Ct. 1467, 143 L.Ed.2d 551 (1999).
[6] See Schlup v. Delo, 513 U.S. 298, 322-24, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995).